**In re DYNAMIC TOURS & TRANSPORTATION, INC., Debtor.**

**No. 6:04–bk–02009–ABB.**

United States Bankruptcy Court, M.D. Florida, Orlando Division.

Sept. 8, 2006.

Kevin E. Mangum, Mangum & Associates PA, Casselberry, FL, for Debtor.

## ORDER

ARTHUR B. BRISKMAN, Bankruptcy Judge.

This matter came before the Court on the Application by General Electric Capital Corporation for an Order Allowing Administrative Expense Claim, Setting Priority of Such Claim and Directing Prompt Payment of Such Expenses in the Amount of $858,303.28 (Doc. No. 215) ("Application") filed by General Electric Capital Corporation ("GE") and the Motion by Debtor to Strike Application for Administrative Expense Claim by General Electric (Doc. No. 222) ("Motion to Strike") filed by Dynamic Tours & Transportation, Inc., the reorganized Debtor herein ("Debtor").

A hearing was held on May 24, 2006, at which the Debtor, counsel for the Debtor, and counsel for GE appeared. The parties were granted fourteen days to submit supplemental briefs in support of their positions. The Court makes the following Findings of Fact and Conclusions of Law after reviewing the pleadings and evidence, hearing live argument, and being otherwise fully advised in the premises.

### FINDINGS OF FACT

#### Case Background: Pre-confirmation Events

The Debtor filed this voluntary Chapter 11 case on February 25, 2004 ("Petition Date"). The Debtor was in the business of providing bus transportation on the Petition Date and continues to operate and manage its business as a reorganized debtor. The Debtor utilized a fleet of buses with twelve of the buses leased from GE (the "Buses") pursuant to certain Commercial Transportation Lease Agreements executed by the Debtor and GE prepetition. The Debtor utilized the GE Buses pre- and post-petition. GE was an active participant throughout this bankruptcy case.

A disagreement existed from the onset of this case as to whether the leases constituted true leases or financing agreements. The determination of this issue would establish the nature of GE's claim rights. GE would have a secured claim if the leases were disguised financing agreements. If they were true leases, GE would have an unsecured claim for rejection damages upon the Debtor's rejection of the leases or cure and adequate assurance rights upon assumption of the leases.

GE filed its original claim, Claim No. 13, on May 3, 2004 as a prophylactic measure while the lease issue was pending. The claim is for the amount of $3,277,317.50, consisting of an unsecured priority amount of $70,872.34 and an unsecured nonpriority amount of $3,206,445.16. GE sets forth in a Rider attached to the claim: "This proof of claim is filed for the purpose of preserving GE Capital's right to assert this claim for rejection damages in the event the Leases are rejected and for priority treatment of post-petition rents due under the Leases...." The Rider includes a reservation of rights clause: "GE Capital reserves its right to amend this proof of claim and this rider as may be necessary to adjust the amount asserted herein, the priority of any amounts due, or to supplement this claim in any way."

The lease issue was resolved by the November 19, 2004 Order (Doc. No. 148)

in which the leases were determined to be true leases. The Order Conditionally Approving Disclosure Statement (Doc. No. 149) was entered on that same date and set the deadline for filing administrative claims fourteen days before January 18, 2005, the date of the confirmation hearing. Order at ¶¶ 2, 8. GE did not timely file an administrative claim nor did it seek an extension of the administrative claims bar date.

The Debtor's Chapter 11 Plan of Reorganization as Modified (Doc. No. 157) ("Plan") was confirmed on February 2, 2005 (Doc. No. 184) ("Confirmation Order"). The Confirmation Order provides the Debtor's unsecured creditors, with filed claims totaling approximately $1,211,000, shall receive a pro rata distribution of at least 31% of their allowed claims and in no event shall the amount disbursed be less than $387,133.12. Confirmation Order at ¶ 3. The Plan put GE on notice the Debtor was contemplating rejecting the GE leases.[1] The Plan contains an injunction in Paragraph A of Article IX enjoining all persons and entities that have held, currently hold, or may hold a claim that is discharged or terminated by the Plan from taking any action against the Debtor to attempt to collect such claim. The Debtor had significant secured debts, which are being paid pursuant to the Plan.

The Debtor had not assumed or rejected the GE leases as of the entry of the Confirmation Order and had not reached an agreement with GE regarding the calculation or treatment of GE's cure amount, if applicable through assumption of the leases. Jurisdiction was reserved to consider a motion by the Debtor to assume the GE leases "at a later date under separate or-

der."[2] Jurisdiction was also broadly reserved to address "any and all matters that may come before the Court in the administration of the Plan and pursuant to the Confirmation Order . . . ."[3]

Confirmation of the Debtor's Plan discharged the Debtor from any debt that arose before the date of confirmation and any debt arising from the rejection of an executory contract or unexpired lease of the Debtor. A discharge injunction arose upon confirmation of the Plan, pursuant to the terms of the Plan and Sections 1141 and 524(a) of the Bankruptcy Code, protecting the Debtor from any act to collect a discharged debt. The confirmed Plan is binding upon the Debtor and every creditor.

### Case Background: Post-confirmation Events

The Debtor rejected the GE leases post-confirmation. GE and the Debtor entered into a Stipulation and Agreed Order for the Rejection of General Electric Capital Corporation's Leases on April 13, 2005 (Doc. No. 190) ("Stipulation"), which the Court approved on April 25, 2005 (Doc. No. 191) ("Stipulation Order"). The Stipulation provides, among other things: (i) the GE leases were rejected by the Debtor effective as of the date of entry of the Stipulation Order; (ii) the Debtor would return the Buses to GE's agent ABC Companies located in Winter Garden, Florida within seven days of entry of the Stipulation Order; (iii) the returned buses would be applied to GE's rejection damages claim; (iv) the allowance of an administrative claim in favor of GE in the amount of $375,313.34 to be paid by the reorganized Debtor in installments through May 2005; and (v) "For purposes of facilitating the

---

1. Doc. No. 166 at pp. 4–6.

2. Confirmation Order at ¶ B.1.

3. *Id.* at pp. 4–5.

Debtor moving forward to entry of a Final Decree, GE Capital, within twenty (20) days of this Stipulation and Agreed Order, shall provide the Debtor with a reasonable estimate of its unsecured claim, and shall provide a final and amended claim within 150 days after entry of the Final Decree and provide notice of same to counsel for the Debtor and the Debtor." Stipulation at pp. 5–6.

A rejection damages claim arose in favor of GE upon entry of the Stipulation Order. The Debtor returned the Buses to GE's agent ABC Companies. GE's records reflect the Buses were received by ABC Companies from April 14, 2005 to May 19, 2005.[4] GE knew the condition of the Buses on June 7, 2005, if not earlier. GE's agent ABC Companies prepared GE Bus Condition Reports for each bus (with the reports dated June 7, 2005 and June 8, 2005) containing detailed descriptions and photographs of the Buses.[5]

GE filed Claim No. 29 on August 22, 2005, which amends Claim No. 13, for the *unsecured nonpriority* amount of $2,759,244.32. The Rider to Claim No. 29 states: "This proof of claim is filed to assert GE Capital's claim for damages due as a result of the rejection of the Leases, and failure to return the subject equipment in accordance with the terms set forth in the Leases." The Rider further provides: "GE Capital reserves its right to amend this proof of claim and this rider as may be necessary to adjust the amount asserted herein, or to supplement this claim in any way, as to amount and/or priority."

GE filed another claim on September 12, 2005, Claim No. 30, which amends Claim No. 29. Claim No. 30 was executed by GE's Litigation Specialist on August 10, 2005. It asserts an *unsecured nonpriority* claim for $3,013,882.17. The Rider to Claim No. 30 contains the same language contained in the Rider to Claim No. 29: "This proof of claim is filed to assert GE Capital's claim for damages due as a result of the rejection of the Leases, and failure to return the subject equipment in accordance with the terms set forth in the Leases .... GE Capital reserves its right to amend this proof of claim and this rider as may be necessary to adjust the amount asserted herein, or to supplement this claim in any way, as to amount and/or priority."

The Rider contains a detailed breakdown of lease amounts including the line item "Cost to Repair Damage to Leased Equipment" of $858,303.28. Rider at p. 2. The repair amount of $858,303.28 is unequivocally a component of the total unsecured nonpriority claim amount of $3,013,882.17. GE did not designate the $858,303.28 repair figure as anything other than a general unsecured nonpriority debt. The Debtor does not agree with the damage repair claim of $858,303.28, but he did not object to Claim No. 30 because an objection had no practical benefit. Claim No. 30 was a general unsecured claim subject to pro rata distribution and its allowance would not adversely affect performance of the Plan.

GE specifically recognized in the Stipulation the importance of moving the case to conclusion: "For purposes of facilitating the Debtor moving forward to entry of a Final Decree, GE Capital, within twenty (20) days of this Stipulation and Agreed Order, shall provide the Debtor with a reasonable estimate of its unsecured claim, and shall provide a final and amended claim within 150 days after entry of the Final Decree...." Stipulation at ¶ 3.

---

4. Doc. No. 231, Exh. No. 1.

5. Doc. No. 229, Exh. Nos. 1,2.

Claim No. 29 was GE's "reasonable estimate of its unsecured claim" and Claim No. 30 was its "final and amended claim," based upon the plain and unambiguous language of the Stipulation and the Stipulation Order and the sequence of events after entry of the Stipulation Order.

All Buses had been returned by the Debtor and detailed inspections of the vehicles had been documented well before GE filed Claim Nos. 29 and 30. GE knew the condition of the Buses when it filed Claims 29 and 30. GE had calculated and included its damages resulting from the Debtor's rejection of the leases in Claim No. 30. Claim No. 30 contains, as a component of rejection damages, the repair damages of $858,303.28. GE knew as early as August 10, 2005 (the date Claim No. 30 was executed) the exact amount of repair costs for the Buses.

All amounts contained in Claim No. 30, including all rejection damages and repair costs, are unsecured nonpriority debts. GE did not file or seek leave to file an administrative claim for repair costs. The only administrative expense claim GE was entitled to was the administrative claim set forth in the Stipulation. Claim No. 30 was GE's final claim and it contained all amounts for damages relating to the Buses.

■ GE's inclusion of a reservation of rights provision in Claim No. 30 does not negate the finding of finality. GE included identical reservation of rights provisions in Claim Nos. 13, 29, and 30. The reservation of rights language does not create a perpetual opportunity for GE to revise its claims. The computation of GE's rejection damages claim could not remain an open issue forever. There must be finality to the reorganization process and both parties recognized the need for finality. GE's actions clearly establish GE filed Claim No. 30 as its final claim.

The Debtor accepted Claim No. 30 as GE's final claim. The Debtor and the other creditors relied on the claim and had no reason to expect an amendment. Claim No. 30 constituted an allowed claim which the Debtor agreed to pay as a general unsecured claim pursuant to the terms of the Plan and Confirmation Order. GE is a general unsecured creditor by virtue of Claim No. 30 and is entitled to a pro rata distribution of its unsecured nonpriority claim.

The Final Decree was entered on August 31, 2005 (Doc. No. 196) without objection. This case was closed on September 16, 2005. GE's failure to oppose the entry of the Final Decree or the closing of the case is further evidence of the finality of Claim No. 30 and that GE considered all matters resolved. All debts forming the basis of Claim No. 30, including the $858,303.28 damage component, were discharged. The discharge injunction of the Bankruptcy Code and the injunction contained in the Debtor's confirmed Plan forever prevent GE from taking any action to attempt to collect the discharged debts.

### District Court Litigation and Reopening of Bankruptcy Case

GE filed a civil suit against the reorganized Debtor in the United States District Court for the Middle District of Florida, Orlando Division, on October 11, 2005 captioned *General Electric Capital Corporation v. Dynamic Tours and Transportation, Inc.*, Case No. 6:05–cv–01515–JA–KRS (the "District Court Litigation"). GE seeks to obtain a judgment against the Debtor for $858,303.28. GE contends the Buses were "cannibalized" by the Debtor and it incurred expenses of $858,303.28 to repair the vehicles. The Debtor sought and obtained a stay of the District Court Litigation.

The Debtor filed an emergency motion to reopen this case for the purpose of determining whether GE violated the discharge injunction ("Motion for Sanctions") (Doc. No. 216). The Debtor contends GE's District Court Litigation is for recovery of a debt that was discharged in the Debtor's bankruptcy case. GE opposed the reopening of this case. (Doc. Nos. 200, 202). This case was reopened on January 20, 2006 for the limited purpose of determining whether GE violated the permanent discharge injunction of §§ 1141 and 524 of the Bankruptcy Code (Doc. No. 212).

### GE's Application and Claim No. 31

GE, on January 27, 2006, filed the Application asserting an administrative priority claim of $858,303.28 and a new claim, Claim No. 31, for $2,155,578.89.[6] GE, in Claim No. 31, removed the amount of $858,303.28 from the claim explaining:

> This *Third and Final Amended Proof of Claim* has been amended to subtract the amount of $858,303.28, the estimated cost to repair the damage to the returned equipment, which had been included in the *Second Amended Proof of Claim* filed on or about September 12, 2005 to provide Debtor with notice of this additional post-petition claim. GE Capital's inclusion of this post-petition (and potentially postconfirmation) claim amount in the *Second Amended Proof of Claim* was **not** intended to be included in its pre-petition, unsecured claim amount.

Claim No. 31 at p. 2 of Rider. GE contends Claim No. 31 and its Application were timely filed pursuant to the Stipulation because they were filed within 150 days of the execution of the Stipulation. GE further contends the costs to repair the Buses "are recoverable damages under

breach of contract claim and/or conversion theories under governing principles of state law." *Id.* The Debtor disputes GE's contentions and filed a motion seeking sanctions against GE (Doc. No. 216) ("Motion for Sanctions").

The Court conducted an evidentiary hearing on the Debtor's Motion for Sanctions and GE's Application on April 3, 2006 and found GE had violated the discharge injunction of §§ 1141 and 524 of the Bankruptcy Code by instituting the District Court Litigation. An assessment of damages suffered by the Debtor as a result of the violation was deferred. The Debtor was granted leave to file any appropriate motions to address procedural issues so the Application and all pending matters could be addressed globally and efficiently.

### Pending Matters

The Debtor filed the Motion to Strike seeking to have the Application stricken. The Debtor contends the Application goes beyond the narrow issue (and the basis for reopening this case) of whether GE violated the discharge injunction and resulting damages from any violation. GE will simply move to reopen the case if the Application is stricken and the case is thereafter closed. Jurisdiction was raised by GE.

The parties agreed, to avoid having to go back to square one and allow for the efficient, global resolution of all pending issues, to construe GE's Application as containing a request to reopen this case. The request to reopen is due to be granted. The case shall remain open to resolve GE's Application, Claim No. 31, the Motion to Strike, and any assessment of damages resulting from GE's violation of the discharge injunction. The Application will be resolved by this Order. The Debtor's Motion to Strike is due to be denied.

---

**6.** Curiously, GE asserts in the first page of Claim No. 31 that it had "never received any notices from the bankruptcy court in this case." Such assertion is clearly incorrect.

GE seeks in its Application to have the repair claim of $858,303.28 deemed an administrative expense claim pursuant to §§ 507(a)(1) and 503(b)(1)(A) of the Bankruptcy Code. GE contends: (i) the Court does not have jurisdiction over this post-confirmation dispute and it should be decided by the District Court; and (ii) the claim of $858,303.28 should be treated as an administrative expense because it is based upon the actual and necessary costs of preserving the estate. GE contends the Debtor tortiously damaged the Buses post-petition and GE "received repair estimates in the amount of $858,303.28. . . ." Application at ¶ 14.

GE presents conflicting arguments in the Application. It contends it was not aware of the alleged damage post-confirmation. Application at ¶ 15. It then contends it was aware of the damage at the time it filed Claim No. 30 and included the figure of $858,303.28 in the claim "to ensure that Debtor received notice that GE Capital intended to seek administrative reimbursement for the damages to the equipment." Application at ¶ 16. GE's own exhibits establish GE was aware post-confirmation, as early as June 7, 2005 and perhaps earlier, of the condition of the Buses. GE believed the repairs would cost $858,303.28 and included that figure as an unsecured nonpriority damage claim in Claim No. 30. GE did not in any way designate such figure as anything other than a general unsecured claim or imply that Claim No. 30 was anything other than a final claim.

7. Confirmation Order at pp. 4–5.

8. "[T]he Bankruptcy Court shall retain the fullest and most expansive jurisdiction that is permitted under applicable law to issue any order or process to carry out the provisions of the Plan, including, but not limited to, determine all claims, enforce all obligations established in the Plan and the Confirmation Order

## Factual Conclusions

This Court has jurisdiction over all pending matters in this case. The issues directly relate to the Debtor's rejection of GE's leases, the claims filed by GE, the effect of confirmation of the Plan, administration of the Plan, and the discharge injunction. The pending matters all relate to, arise under, and/or arise in connection with the Plan and this Chapter 11 case. Jurisdiction was specifically retained for these matters pursuant to the Confirmation Order.[7] Jurisdiction exists pursuant to Article X of the Plan.[8] GE, by entering an appearance in this case and filing claims, consented to jurisdiction "for all purposes with respect to any and all matters relating to, arising under or in connection with the Plan or the Chapter 11 Case, including the matters and purposes set forth in Article II of the Plan." [9]

Confirmation of the Debtor's plan discharged the Debtor "from any debt that arose before the date of confirmation" and any debt arising from the rejection of an executory contract or unexpired lease of the Debtor pursuant to § 1141(d)(A) of the Bankruptcy Code. Confirmation of the Plan, pursuant to the statutory provisions of the Bankruptcy Code and Article IX of the Plan, gave rise to a discharge injunction protecting the Debtor from any act to collect a discharged debt.

The Debtor rejected GE's leases and created a rejection damages claim in favor of GE pursuant to the Stipulation Order. GE filed Claim No. 30, a general unsecured non-priority claim in the amount of

. . . to enforce and interpret the Plan and to resolve any dispute and questions of any kind arising in connection with any act arising out of or contemplated by the Plan and the rights created herein or in the Confirmation Order." Plan at Article X.

9. Plan at Article XI, ¶ I.

$3,013,882.17, as its final claim in this case. All damages related to the rejection of the leases are included within that claim. GE knew the exact cost of repairs to be $858,303.28 on August 10, 2005 when its Litigation Specialist executed Claim No. 30. Claim No. 30 was an allowed claim and was discharged in its entirety pursuant to the Plan and the statutory provisions of the Bankruptcy Code. GE is entitled to payment of Claim No. 30 on a pro rata basis with the Debtor's other general unsecured creditors pursuant to the terms of the Plan.

GE instituted the District Court Litigation seeking judgment against the reorganized Debtor for $858,303.28—the exact amount contained in Claim No. 30 for repair costs. GE made no attempt prior to instituting the District Court Litigation to determine if the repair claim had been discharged or the status of that claim. GE filed no motion seeking to reopen this case, no motions seeking a determination of the status of the repair claim, and no motions to amend Claim No. 30 or seeking other relief. GE embarked on a course of action that violated the provisions of the confirmed Plan and the Debtor's discharge injunction.

GE, unhappy with its status as a general unsecured creditor, has extracted the $858,303.28 repair figure from Claim No. 30 to create Claim No. 31. It is attempting to elevate the $858,303.28 figure from a general unsecured nonpriority claim to a priority administrative claim. GE is attempting to recharacterize the discharged unsecured nonpriority claim as an administrative claim. It is not amending the previous claim, but is presenting an entirely new claim. The presentation of the new claim is not timely. No cause, legal or equitable, exists for allowing the Application. There is no basis for allowing the

new claim. The Application and Claim No. 31 are due to be disallowed.

## CONCLUSIONS OF LAW

The pending matters all relate to, arise under, and/or arise in connection with the Plan and this Chapter 11 case. There is jurisdiction for the pending matters pursuant to the terms of Article X of the Plan and the Confirmation Order. GE, by entering an appearance and filing claims, consented to the jurisdiction pursuant to Article XI of the Plan. Plan at Article XI, ¶ I.

### Discharge and the Discharge Injunction

 Confirmation of the Debtor's Plan discharged the Debtor from any debt that arose before the date of confirmation and any debt arising from the rejection of an executory contract or unexpired lease of the Debtor. 11 U.S.C. §§ 1141(d), 502(g) (2005). Confirmation of the Plan gave rise to a discharge injunction protecting the debtor from any act to collect a discharged debt. 11 U.S.C. § 524(a); Plan at Article IX, ¶ A. The provisions of the confirmed Plan bind the Debtor and all creditors. 11 U.S.C. § 1141(a).

Section 502(g) allows for a claim arising from the rejection of an unexpired lease pursuant to § 365 "and shall be allowed ... the same as if such claim had arisen before the date of the filing of the petition." 11 U.S.C. § 502(g). The Debtor's rejection of the GE leases caused a rejection damages claim to arise in favor of GE upon entry of the Stipulation Order. 11 U.S.C. § 502(g); Stipulation at p. 5, ¶ 1. GE, pursuant to the Stipulation, filed two proofs of claim setting forth its rejection damages claim. Claim No. 29 was GE's "reasonable estimate of its unsecured claim" and Claim No. 30 was its "final and amended claim" pursuant to the Stipulation.

■ Claim No. 30 was an unsecured nonpriority claim for $3,013,882.17 and contained the amount of $858,303.28 for repairs of the Buses. Claim No. 30 was accepted by the Debtor and became an allowed claim, as defined by the Plan and 11 U.S.C. § 502(a). The Debtor and the other creditors relied on the claim and had no reason to expect amendment. Finality is essential to the reorganization process. "Absent finality, reorganization would be impossible." In re Drexel Burnham Lambert Group, Inc., 129 B.R. 22, 26 (Bankr. S.D.N.Y.1991). GE is entitled to payment of Claim No. 30 on a pro rata basis with the Debtor's other general unsecured creditors pursuant to the terms of the Plan.

Claim No. 30 contains amounts relating to prepetition debts and rejection damages. All debts contained in Claim No. 30 were discharged pursuant to the terms of the Plan and 11 U.S.C. § 1141(d). The discharge injunction of 11 U.S.C. § 524(a) and Article IX, ¶ A of the Plan forever barred GE from attempting to collect any discharged debt from the Debtor. GE violated the discharge injunction by instituting the District Court Litigation. GE seeks to recover the amount of $858,303.28 from the Debtor in the District Court Litigation. Such amount was contained in GE's Claim No. 30 as an unsecured nonpriority component of the total claim amount of $3,013,882.17. All debts contained within Claim No. 30 were discharged in their entirety.

### GE's Application and Claim No. 31

■ GE contends it reserved its rights to amend Claim No. 30 and timely filed an amendment within the 150–day Stipulation period. No provision of the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure addresses amendment of proofs of claim. Most courts, in analyzing post-bar date amendments, apply a "nexus" test, which focuses on the connection between the original claim and the amendment. See In re International Horizons, Inc., 751 F.2d 1213, 1216 (11th Cir.1985) (looking to Fed. R. Bankr.P. 7015 and Fed.R.Civ.P. 15(b) as requiring the amendment arise from the "same conduct, transaction or occurrence"). The nexus test requires the amendment be to cure a defect, provide a more particular description of the claim or plead a new theory of recovery on facts stated in the original claim. Id.

■ An "amendment" to a claim must be distinguished from a "new" claim. "[T]he court must subject post bar date amendments to careful scrutiny to assure that there was no attempt to file a new claim under the guise of amendment." In re International Horizons, 751 F.2d at 1216. The assertion of a "new" claim after the bar date is governed by Federal Rules of Bankruptcy Procedure 3002, 3003, 3004 or 3005, and will be permitted, if at all, to the extent timely filings are allowable.

■ The nexus test is not relevant to this matter. GE is not seeking to amend Claim No. 30 through its Application and Claim No. 31. GE is attempting to convert the discharged unsecured nonpriority debt of $858,303.28 contained within Claim No. 30 into an administrative priority claim. It is seeking to assert an entirely new claim. In re National Merchandise Co., Inc., 206 B.R. 993, 999 (Bankr. M.D.Fla.1997). Changing a claim from an unsecured status to a priority status "quite obviously sets forth a new claim." In re Alliance Operating Corp., 173 B.R. 326, 329 (E.D.La.1994).

GE is not entitled to relief because its assertion of a new claim is not timely. GE did not timely file the Application and Claim No. 31. Filing the Application and Claim No. 31 before the 150–day Stipulation period expired does not constitute a

timely filing. GE's actions establish Claim No. 30 was its final claim encompassing any and all damages relating to the rejection of the leases. The Debtor accepted that claim as a final claim and commenced to carry out the provisions of the Plan. GE did nothing to call into question the finality of the claim and did not challenge the Final Decree or the closing of the case.

■ Section 503(a) provides an entity "may timely file a request for payment of an administrative expense, or may tardily file such request if permitted by the court for cause." 11 U.S.C. § 503(a). No cause exists to allow the filing of an administrative claim or amendment of Claim No. 30 by GE.

■ GE contends it is entitled to a priority administrative claim based on equitable principles. GE cites case law in support of the proposition innocent victims of an estate's tortious conduct are to be granted priority status for their damages claims. Equitable principles do not favor GE in this matter. GE had written reports with photographs detailing the condition of each Bus by June 7, 2005. GE, by August 10, 2005, had calculated with specificity the costs to repair the Buses. It included the repair costs of $858,303.28 as a line item in Claim No. 30. Claim No. 30 was GE's final claim and the parties relied on it as such. The filing of the Application at this late date is an attempt to counteract the missteps GE made in the District Court Litigation. GE is bound by Claim No. 30. All debts between GE and the Debtor have been discharged.

Accordingly, it is

**ORDERED, ADJUDGED and DECREED** that GE's pleadings are hereby construed to include a request to reopen this case and such request is hereby **GRANTED;** and it is further

**ORDERED, ADJUDGED and DECREED** that the Debtor's Motion to Strike is hereby **DENIED;** and it is further

**ORDERED, ADJUDGED and DECREED** that GE's Application and Claim No. 31 are hereby **DISALLOWED.**